**UNITED STATES of America,**
**Plaintiff,**

v.

**Julie Ann AMERICAN HORSE, f/k/a Julie Ann Red Bear; Cornelius M. American Horse; Darlene E. American Horse; Mona L. Follet; and Dustin American Horse; Defendants.**

No. A1–04–73.

United States District Court,
D. North Dakota,
Southwestern Division.

Jan. 11, 2005.

Kent Rockstad, U.S. Attorney's Office, Fargo, ND, for plaintiff.

Judith H. Roberts, Dakota Plains Legal Services, Fort Yates, ND, Ronald D. Hutchinson, Dakota Plains Legal Services, Mission, SD, for defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is defendant, Julie Ann American Horse's Motion to Dismiss filed on October 4, 2004. American Horse has also made a request for oral argument. The Plaintiff has filed a motion opposing dismissal. For the reasons set forth below, the Court denies the motion.

## I. BACKGROUND

On or about November 3, 1999, the plaintiff, United States of America, acting through the Department of Agriculture, Rural Housing Service ("RHS"), loaned defendant Julie Ann American Horse $53,370. The loan is secured with a leasehold mortgage on the American Horse's residence which is located on land in trust status within the boundaries of the Standing Rock Indian Reservation.[1] The mortgage was approved by the Secretary of the Interior on or about June 30, 2000, and recorded in the office of the Register of Deeds of Sioux County, North Dakota, on July 6, 2000. Julie Ann American Horse is a lessee/tenant under the terms of a 25-year lease. She is not the owner of the property. The RHS mortgage is a leasehold mortgage and only the leasehold interest held by American Horse is subject to the mortgage which the Government now seeks to foreclose. American Horse made only one payment in the amount of $2,682.13 on October 15, 2001.

On April 13, 2004, the Government served American Horse and Cornelius M. American[2] with a Notice of Intention to Foreclose Real Estate Mortgage because they had defaulted on their payment of the promissory note. They were given 30 days to pay the full amount due, or an action for foreclosure of the mortgage would be sought. On June 4, 2004, the Government filed an action in the United

---

1. The real estate subject to the mortgage is described as follows:

 All of the Borrower's right, title and interest in, to and under that certain lease (and any renewals and extensions thereof) dated September 8, 1999, Lease No. 302–28726, Allotment No. 302–2025–A, between Heirs of Allotment SR–2025–A, and Lessor, and Cornelius M. American Horse and Julie Ann American Horse, as Lessee, and covering the following property located in Sioux County, North Dakota: a parcel of land containing 2.5 acres, more or less, within Allotment SR–2025–A,

 SW1/4SW1/4NE1/4SW1/4, Section 15, Township 133 North, Range 79 West, Fifth Principal Meridian, North Dakota.

2. The Government has no personal claim against Cornelius M. American Horse, Darlene E. American Horse, Mona L. Follet, or Dustin American Horse. Those parties are included in the action merely to extinguish any right, title, or interest they may have or claim to have in the real estate subject to the mortgage.

States District Court for the District of North Dakota to foreclose the mortgage and collect the proceeds.

## II. *LEGAL DISCUSSION*

The defendant, Julie Ann American Horse, filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. American Horse alternatively argues that the Court should dismiss or stay the proceedings under the doctrine of tribal exhaustion.

### A. *MOTION TO DISMISS*

 "The standard for a district court to employ in ruling on a motion to dismiss is clear." *Crumpley–Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir.2004). "A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Id.* (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996)). "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *McCormack v. Citibank, N.A.,* 979 F.2d 643, 646 (8th Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A motion to dismiss should be granted 'as a practical matter ... only in the unusual case in which there is some insuperable bar to relief.' " *Strand v. Diversified Collection Service, Inc.,* 380 F.3d 316, 317 (8th Cir.2004) (citing *Frey v. Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (quoting *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974))). "Under the Federal Rules, it is not necessary to plead every fact with formalistic particularity." *BJC Health System v. Columbia Cas. Co.,* 348 F.3d 685, 688 (8th Cir.2003).

"A pleading which sets forth a claim for relief ... shall contain a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R.Civ.P. 8(a).

The United States submitted a short recitation of the factual allegations contained in the Complaint, which reads as follows:

[T]hat the defendant executed and delivered a promissory note and mortgage to RHS in exchange for a loan; the mortgage was approved by the Secretary of the Department of the Interior; that the defendant defaulted under the terms of the promissory note and mortgage in the she failed to make timely payment; the United State accelerated the account; the United States is still the owner and holder of the promissory note and mortgage; the amount owed as of June 3, 2004, was principal in the sum of $55,587.50, interest in the sum of $10,358.67, with interest accruing thereafter at the rate of 7.125 percent per annum; and the United States served defendants with a Notice of Intention to Foreclose.

*See* Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 3; Complaint ¶¶ 1–8. The Plaintiff also submitted copies of the promissory note, mortgage, lease, and statement of account.

American Horse's argument is predicated upon 25 U.S.C. § 483a, which provides as follows:

(a) The individual Indian owners of any land which either is held by the United States in trust for them or is subject to a restriction against alienation imposed by the United States are authorized, subject to approval by the Secretary of the Interior, to execute a mortgage or deed of trust to such land. Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage

or deed of trust in accordance with the laws of the tribe which has jurisdiction over such land or, in the case where no tribal foreclosure law exists, in accordance with the laws of the State or Territory in which the land is located. For the purpose of any foreclosure or sale proceeding the Indian owners shall be regarded as vested with an unrestricted fee simple title to the land, the United States shall not be a necessary party to the proceeding, and any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land. All mortgages and deeds of trust to such land heretofore approved by the Secretary of the Interior are ratified and confirmed.

(b) In the event such land is acquired by an Indian or an Indian tribe, such land shall not be removed from trust or restricted status except upon application to the Secretary under existing law.

25 U.S.C. § 483a. American Horse cites to the Eighth Circuit case of *Northwest S.D. Prod. Credit Ass'n. v. Smith,* 784 F.2d 323 (8th Cir.1986), which addressed 25 U.S.C. § 483a. In *Smith,* Northwest South Dakota Credit Association ("PCA"), a mortgagee, sought foreclosure and sale of trust land located within the Cheyenne River Sioux Indian Reservation in South Dakota. PCA brought an action in federal court invoking federal question jurisdiction under 28 U.S.C. § 1331, on the grounds that the cases arises out of 25 U.S.C. § 483a. The district court dismissed the suit for failure to state a claim upon which relief can be granted, and concluded "that § 483a does not create a federal cause of action for foreclosure of mortgages on Indian trust land.... The statute secures no federal right." *Northwest S.D. Prod. Credit Ass'n. v. Smith,* 784 F.2d 323, 326.

■ Unlike *Smith,* the United States is not relying on federal question jurisdiction under 28 U.S.C. § 1331. Instead, the United States relies on 28 U.S.C. § 1345, which provides as follows:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

"Generally, district courts have original jurisdiction over suits brought by the United States to foreclose mortgages on realty situated within the district." *United States v. Torres,* 142 F.3d 962, 966 (7th Cir.1998) (citing *Garden Homes, Inc. v. United States,* 200 F.2d 299, 300 (1st Cir. 1952)); *see United States v. Mosbrucker,* 340 F.3d 664, 666 (8th Cir.2003) (holding that district court had jurisdiction to order foreclosure and eviction).

■ American Horse contends that 25 U.S.C. § 483a constitutes an exception to general jurisdiction, citing the "[e]xcept as otherwise provided by Act of Congress" language contained in 28 U.S.C. § 1345. "When there are statutes clearly defining the jurisdiction of the courts [such as section 1345] the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 808, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *Rosecrans v. United States,* 165 U.S. 257, 262, 17 S.Ct. 302, 41 L.Ed. 708 (1897)). "While Congress may displace section 1345 in particular categories of cases if it so desires, courts will not infer such displacement unless Congress has made its intention plain." *United States v. District of Columbia,* 669 F.2d 738, 741 (D.C.Cir.1981) (citations omitted). Courts have held that any exceptions to the general rule of section 1345 "must be clear and unequivocal." *United States v. Commonwealth of Puerto Rico,* 551 F.Supp. 864, 866 (D.Puerto Rico 1982).

To support her contention that Congress intended to create an exception to general jurisdiction, American Horse relies on a portion of 25 U.S.C. § 483a which provides:

Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage or deed of trust in accordance with the laws of the tribe which has jurisdiction over such land or, in the case where no tribal foreclosure law exists, in accordance with the laws of the State or Territory in which the land is located.

The Court is not convinced that 25 U.S.C. § 483a clearly and unequivocally created an exception to general jurisdiction under 28 U.S.C. § 1345. Accepting all factual allegations as true, and drawing all inferences in favor of the Plaintiff, the Court finds that the Government has satisfied its burden under Rule 8 of the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 8. As a result, a dismissal under Rule 12(b)(6) for failure to state a claim is unwarranted at this stage.

## B. *TRIBAL COURT EXHAUSTION*

■ American Horse alternatively argues that the Court should dismiss or stay the proceedings under the doctrine of tribal court exhaustion. "It is now settled that principles of comity require that tribal-court remedies *must* be exhausted before a federal district court should consider relief in a civil case regarding tribal-related activities on reservation land." *Krempel v. Prairie Island Indian Community,* 125 F.3d 621, 622 (8th Cir.1997) (citing *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *National Farmers Union Ins. Cos.*

*v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412 (8th Cir.1996)). "The tribal exhaustion doctrine is based on 'a policy of supporting self-government and self-determination,' and it is prudential rather than jurisdictional." *Gaming World International, Ltd. v. White Earth Band of Chippewa,* 317 F.3d 840, 849 (8th Cir.2003) (quoting *National Farmers Union,* 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818) (citations omitted). The Eighth Circuit has also explained other benefits of the tribal exhaustion doctrine:

In addition to encouraging tribal self-government, exhaustion of tribal remedies permits a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed in the federal district court.... It will also encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will provide other courts with the benefit of their expertise in such matters in the event of further judicial review. Thus, the requirement of tribal exhaustion contemplates the development of a factual record that will serve the orderly administration of justice in federal court.

*Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294, 1300 (8th Cir.1994) (citing *National Farmers Union,* 471 U.S. 845, 856–57, 105 S.Ct. 2447, 85 L.Ed.2d 818) (internal quotations omitted).

Ultimately, the Eighth Circuit has held that "[e]xhaustion is mandatory, however, when a case fits within the policy" of supporting tribal self-government and self-determination.[3] *Gaming World Interna-*

---

**3.** As noted by the United States Supreme Court and the Eighth Circuit Court of Appeals "[e]xhaustion is not required if an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, if the

action is patently violative of express jurisdictional prohibitions, or if exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *DeMent v. Oglala Sioux Tribal Court,*

*tional,* 317 F.3d 840, 849 (citing *Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294, 1300 (8th Cir.1994); *Burlington N. R.R. Co. v. Crow Tribal Council,* 940 F.2d 1239, 1245 (9th Cir.1991)). Further, courts have recognized that "the exhaustion rule does not require an action to be pending in tribal court." *United States v. Tsosie,* 92 F.3d 1037, 1041 (10th Cir. 1996) (citing *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 480, 56 S.Ct. 343, 80 L.Ed. 331 (1936)); *see United States v. Plainbull,* 957 F.2d 724, 728 (9th Cir.1992) (citing *Wellman v. Chevron U.S.A., Inc.,* 815 F.2d 577, 578 (9th Cir.1987)) ("[w]hether a tribal action is pending, however, does not determine whether abstention is appropriate."); *United States ex rel Kishell v. Turtle Mountain Housing Authority,* 816 F.2d 1273 (8th Cir.1987); *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668 (8th Cir.1986).

As noted by the Government, there are few cases that discuss tribal court exhaustion when the United States is a party to the action. American Horse cites *United States v. Tsosie,* 92 F.3d 1037, 1043 (10th Cir.1996) and *United States v. Plainbull,* 957 F.2d 724, 726–28 (9th Cir.1992), for the proposition that the tribal exhaustion doctrine is not necessarily precluded simply because the United States is a party. In *Tsosie,* the United States brought an action for trespass and ejectment on its own and on behalf of a Navajo tribal member, against another Navajo tribal member. The lower court dismissed the action under the tribal exhaustion doctrine and the

Tenth Circuit affirmed that decision. In doing so, the Tenth Circuit said that "[b]ecause the dispute here is between two Navajo Indians and involves land located in Navajo Indian country, we believe this case is essentially 'a reservation affair' in which exhaustion of a tribal court remedy is almost always required.... The fact that the complainant in this case is the United States does not justify a departure from the rule...." *Tsosie,* 92 F.3d 1037, 1042–43 (citations omitted)[4]. The Tenth Circuit concluded that "where the United States commences an ... action on behalf of an Indian against another Indian involving land located in Indian country, it is required to exhaust remedies in tribal court prior to initiating an action in district court." *Id.* at 1044.

In *Plainbull,* two members of the Crow Tribe grazed livestock on the tribal range units without a valid grazing permit and without having paid grazing fees. *Plainbull,* 957 F.2d 724, 725. After years of documented trespass by the Plainbulls' livestock on tribal lands, the Bureau of Indian Affairs billed the Plainbulls for trespass penalties and for the value of consumed forage under federal law. However, the Plainbulls refused to comply with orders to pay grazing fees and desist in trespassing. As a result, the United States brought an action on its own and on behalf of the Crow Tribe. The lower court granted dismissal finding that the "case essentially involves the enforcement of a tribal resolution against a tribal member, and consequently appears to be an internal tribal matter which ought to be resolved in

---

874 F.2d 510, 516 (8th Cir.1989) (citing *National Farmers Union,* 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 85 L.Ed.2d 818.). Neither the parties, nor the Court find any of these concerns relevant with respect to the present case.

4. The court also stated that "[t]he United States' decision to bring this suit on behalf of

Mr. Mariano does not alter the fact that this is essentially a dispute between Indians over certain rights to land in Indian country." *Tsosie,* 92 F.3d 1037, 1043. "The Tribal courts here have a significant interest in adjudicating a dispute between Tribal members over Indian land involving Tribal laws and customs." *Id.* at 1043 n. 10.

the tribal court system." *Id.* at 725. On review, the Ninth Circuit said that "[a] tribal court presumptively has jurisdiction over activities that take place on tribal land." *Id.* at 727 (citing *Wellman v. Chevron, U.S.A., Inc.*, 815 F.2d 577, 578 (9th Cir.1987)). The Ninth Circuit affirmed holding that "[t]he alleged trespass was to tribal land and considerations of comity require that the tribal courts get first opportunity to resolve this case." *Id.* at 728.

A plain reading of *Tsosie* and *Plainbull* reveals that in both cases the underlying dispute involved an internal tribal matter and the United States was filing an action on behalf of either a tribal member or the tribe itself. The Court finds that the holdings in *Tsosie* and *Plainbull* are inapposite to the present action. Unlike *Tsosie* and *Plainbull*, the United States has not brought an action on behalf of another. This dispute is between the United States and American Horse over a privately held debt secured by a mortgage. The Standing Rock Sioux Tribe has no direct connection to the debt owed by American Horse to the United States. The tribe did not sign the promissory note or the mortgage. As recognized by the Government, American Horse's debt arose from a loan made by RHS. The funds used to make the loan were federal funds and the loan itself was authorized in accordance with a federal lending program. The loan was processed, approved, disbursed, and serviced by federal employees. Based on these facts, the Court finds that this action does not involve tribal-related activities so as to require tribal exhaustion prior to filing. *See Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412, 1420 (8th Cir.1996) (citing *Reservation Tel. Co-op. v. Three Affiliated Tribes,* 76 F.3d 181, 184 (8th Cir.1996) (holding that exhaustion is required "in matters related to reservation affairs.")). It is also significant to note that neither the parties, nor the Court, could locate any existing precedent requir-

ing exhaustion in a foreclosure action brought by the United States against a tribal member. Further, the Court finds that 25 U.S.C. § 483a does not disrupt this holding. The Court finds that a dismissal or a stay of the proceedings is unwarranted under the current state of the law.

## III. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss is **DENIED.** (Docket No. 20). Defendant's request for an evidentiary hearing is also **DENIED.** (Docket No. 29).

**IT IS SO ORDERED.**